UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

MICHAEL B. AMES,

                    Petitioner,

       -against-

THE PEOPLE OF THE STATE OF NEW YORK,

                    Respondent.

-----------------------------------------------------------------X

**OPINION AND ORDER**
14-cv-5630 (SJF)

FILED
CLERK

9/25/2017 2:34 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**FEUERSTEIN, District Judge:**

Presently before the Court is *pro se* Petitioner Michael B. Ames' ("Petitioner" or "Ames") Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody ("Petition"), which Respondent The People of the State of New York ("Respondent" or the "State") opposes. *See* Docket Entry ("DE") [1], [15]. For the reasons set forth herein, Ames' Petition is denied.

## I.      BACKGROUND

### A.  <u>Criminal Activity</u>

In approximately 2002, Petitioner met Loretta Ames ("Loretta"), who had two (2) daughters: A.H., who was born on July 19, 1989, and E.V., who was born on January 23, 1997. *See* Return Affirmation of Anne E. Oh ("Oh Aff."), DE [15], ¶¶ 6, 7. In 2003, Petitioner moved into Loretta's home with Loretta and her daughters, at which time, A.H. was fourteen (14) years old and E.V. was five (5) years old. *Id.* at ¶¶ 6, 12.

Beginning in approximately April 2006, Petitioner was home alone with A.H. every Monday, Tuesday, and Wednesday afternoon from approximately 2:30 p.m. until Loretta arrived home at approximately 6:00 p.m. *Id.* at ¶ 6. While home alone with A.H., Ames ordered A.H. to care for him, which included, *inter alia*, "providing petitioner with massages for his health." *Id.* at ¶ 7. Sometime in April 2006, Petitioner told A.H. that if she "performed a massage with her bare

1

breasts, it would provide him more therapeutic relief." *Id.* A.H. administered these massages for "several weeks" before Petitioner "escalated the behavior" by "prohibit[ing] [A.H.] from leaving his bedroom until she showed him her vagina." *Id.* at ¶ 8. Approximately one (1) week after asking A.H. to show him her vagina, Petitioner "asked [A.H.] if he could touch her vagina." *Id.* Ames also "asked A.H. to rub his penis" and "move her hand up and down," stating that it was a "special massage, [a] different kind of massage, [that] would make it better." *Id.* at ¶ 9. Sometime between May and July 16, 2006, while A.H. was rubbing Petitioner's penis, he told A.H. "that it would go a lot faster and that she would be able to leave the room sooner if she used her mouth." *Id.* at ¶ 10. Petitioner "instructed [A.H.] how to move her mouth like she moved her hands," and A.H. complied. *Id.* Also between May and July 16, 2006, Petitioner "told A.H. that he no longer just wanted to see her vagina anymore but informed her that he also wanted to lick it." *Id.* at ¶ 11. After he did so, Petitioner "told A.H. that it tasted good and that he was going to leave some on his mustache for later." *Id.*

A.H. never reported Petitioner's abuse "because she was afraid of the potential aftermath of disclosure," as Petitioner "repeatedly warned A.H. that disclosure would ruin her life and his life." *Id.* at ¶ 12. Upon graduating high school in 2007, A.H. immediately "left the house and went to live with her maternal grandmother" in Florida, but warned Ames that he "better not touch E.V. or do anything to her that [he] did to [A.H.]." *Id.* Petitioner stated that he would not "because he thought of E.V. as his daughter." *Id.* Nevertheless, between July 1, 2008 and November 15, 2008, Ames engaged in two (2) or more acts of sexual conduct with E.V., who was nine (9) years old at the time. *Id.* Specifically, on days that Petitioner and E.V. were home alone together, "Petitioner often asked E.V. to massage his stomach, back and feet with lotion to help with his diabetic condition." *Id.* at ¶ 13. Sometime during the summer of 2008, while E.V. rubbed lotion on Petitioner's stomach, his "penis started showing up from under his boxers." *Id.* Ames "took

[E.V.'s] hand and put it near his penis," telling her to "rub it." *Id.* Petitioner subjected E.V. to this type of sexual conduct "about five times," and he "always told her not to tell anyone," stating that "if she was not 'mature' enough to do this then she was not mature enough to stay home alone." *Id.*

On November 17, 2008, E.V. informed A.H. that Petitioner "sometimes touches—makes [her] touch his penis." *Id.* at ¶ 15. A.H. "became instantly 'hysterical'" and informed her grandmother, Jean Patchen, of Petitioner's conduct. *Id.* Patchen informed Loretta, who "immediately called 911." *Id.* Suffolk County Police Department ("SCPD") officers reported to Loretta's home to speak with E.V., and, after the officers left, Loretta "packed up her children and fled to her brother's house in Rockland County." *Id.* That evening, Petitioner received voicemails from his brother-in-law telling Ames to "keep his hands off my nieces." *Id.* at ¶ 16.

On November 18, 2008, Petitioner went to the Special Victims Bureau of the SCPD and informed Detective Bruce Croce of his brother-in-law's voicemails. *Id.* Croce informed Ames "that E.V. had made allegations of sexual contact," which Ames denied. *Id.* Petitioner spoke to Croce for approximately one (1) hour, during which time he described his relationship with A.H. and E.V. *Id.* at ¶ 17. At the end of the interview, Croce "reviewed the case file and determined that there was probable cause to arrest petitioner." *Id.* Shortly after Croce placed Petitioner under arrest, SCPD Detectives Michael Sanchez and Margaret Kirk re-interviewed Petitioner. *Id.* at ¶ 18. Before speaking with Petitioner, Sanchez and Kirk advised Ames of his *Miranda* rights, which Ames "knowingly and voluntarily waived by signing [a] rights card." *Id.* During the course of the interview, Petitioner described, *inter alia*, an incident "earlier that summer, while in his bedroom, [where] he inspected E.V.'s vagina and observed white spots in the area." *Id.* at ¶ 19. Petitioner informed the Detectives that he "did not touch [E.V.] but immediately called his wife because he was thinking about providing Neosporin to her or applying [it] for her if she couldn't do it," but

Loretta instructed him not to do so. *Id.* Sanchez testified that, after interviewing Ames, he offered Petitioner the opportunity to sign a pre-written statement, but that Petitioner declined. *Id.*

**B. Criminal Proceedings**

1. Prosecution and Conviction

On November 24, 2008, under Suffolk County Indictment No. 3125-08 (the "Indictment"), a Suffolk County grand jury indicted Ames for: (i) one (1) count of course of sexual conduct against a child in the second degree in violation of N.Y. Penal Law § 130.80; (ii) one (1) count of endangering the welfare of a child in violation of N.Y. Penal Law § 260.10; (iii) two (2) counts of criminal sexual act in the third degree in violation of N.Y. Penal Law § 130.40; and (iv) two (2) counts of sexual abuse in the third degree in violation of N.Y. Penal Law § 130.55. *Id.* at ¶ 20. By way of a November 25, 2008 Notice Pursuant to N.Y. Crim. Proc. Law § 710.30 (the "710.30 Notice") the State provided Petitioner with "evidence of oral statements made by [Petitioner] to a public servant." DE [16-3] at 70. Specifically, the 710.30 Notice provides that, at approximately 6:15 p.m. on November 18, 2008, Petitioner stated to officers at the Seventh Precinct of the SCPD:

> I regularly watched television with [E.V.] lying in my bed. [E.V.] usually laid on my stomach as if I am a pillow. I wear only a t-shirt and boxers when doing this, but the whole family walks around the residence this way. [E.V.] is usually the one who massages my legs, neck and back in my bedroom with lotions. One time recently I touched only the inner thigh of [E.V.] as she laid unclothed on my bed in order to examine her vaginal area after complaining of a burning sensation. After seeing what were white spots I informed spouse by telephone that I was going to treat [E.V.] with Neosporin and spouse directed me not to do so.

*Id.* At trial, Detectives Sanchez and Kirk both testified that, after they spoke to Petitioner on November 18, 2008, Petitioner declined to sign a pre-written statement "to account for what [they] spoke about." *See* Tr., DE [16-4], at 477:13-24.

On January 6, 2009, Petitioner demanded, *inter alia*, a bill of particulars pursuant to N.Y. Crim. Proc. Law § 200.90 enumerating: (i) the date, time, and place that each of the charged

offenses occurred with a reasonable degree of specificity; (ii) the names and addresses of all witnesses to the events constituting the charged offenses; (iii) the specific conduct prohibited by the statute under which Petitioner was charged, including the number of times and approximate duration of such acts; and (iv) the time and place of Petitioner's arrest, including the arresting officers' identification information. DE [16-1] at 11. Thereafter, the State served Ames with various documentary discovery in response to Petitioner's demands and provided a bill of particulars (the "Bill of Particulars") describing the nature of each charge for which Petitioner was indicted. *Id.* at 29-33. The Bill of Particulars states, *inter alia*, that "[t]he crime charged occurred on or about and between March 1, 2006 and April 30, 2006 at the location of 945 Old Town Road, Coram, Town of Brookhaven, County of Suffolk, State of New York." *Id.* at 32.

On March 11, 2009, Petitioner filed a Notice of Omnibus Motion (the "Omnibus Motion") in the County Court of the State of New York, Suffolk County ("County Court, Suffolk County" or the "trial court"), in which he sought an Order, *inter alia*: (i) precluding the use of any statements that he made to a public servant that were not voluntarily disclosed pursuant to N.Y. Crim. Proc. Law § 710.30; (ii) precluding the use of any statements identified in a N.Y. Crim. Proc. Law § 710.30 voluntary disclosure form as involuntarily made, or, in the alternative, directing that a *Huntley* hearing be held to determine whether any such statements were voluntary; and (iii) directing the State to serve a more specific Bill of Particulars pursuant to N.Y. Crim. Proc. Law § 200.95. DE [16-3] at 5-8. With respect to the 710.30 Notice, Petitioner argued that the trial court should "preclude Mr. Ames' statements contained in the 710.30 notice as they were not voluntarily made." *Id.* at 6. With respect to his motion for a more specific Bill of Particulars, Petitioner argued that the State's Bill of Particulars "failed to provide the defendant with a reasonable length of time concerning the defendant's alleged criminal conduct" and "failed to state a specific number of alleged criminal acts in counts one and two of the indictment." *Id.* at 12-13.

In an April 21, 2009 Order (the "Omnibus Order"), the trial court: (i) granted the "branch of [Petitioner's] motion seeking suppression of statements made to law enforcement personnel . . . to the limited extent that a *Huntley* hearing" would be held "immediately prior to trial to determine whether such statements were voluntarily made"; (ii) denied without prejudice Petitioner's motion to suppress any statements not identified in a N.Y. Crim. Proc. Law § 710.30 voluntary disclosure form to renewal upon the State's attempt to introduce such statements into evidence; and (iii) denied Petitioner's application for a more specific Bill of Particulars as moot, observing that the State "ha[d] indicated that they have previously submitted the information requested to defense counsel." DE [16-3] at 1. The trial court held a *Huntley* hearing on July 16, 2009, and, in an August 17, 2009 Decision After Hearing (the "*Huntley* Hearing Order"), the trial court concluded that Petitioner voluntarily made the statements identified in the 710.30 Notice. DE [16-1] at 22-26. The trial court observed that Detectives Sanchez and Kirk read Petitioner his *Miranda* warnings prior to questioning him, that Petitioner indicated that he understood the effect of waiving his *Miranda* rights, and that Petitioner's statements were not "involuntarily made" as defined by N.Y. Crim. Proc. Law § 60.45, as Petitioner was neither physically threatened nor otherwise coerced into making the statements at issue. *Id.* Accordingly, the trial court held that Petitioner "had adequate opportunity to contest the voluntariness of the noticed statements" and denied Petitioner's motion to suppress the 710.30 Notice. *Id.*

Following a jury trial commencing on October 28, 2009, on or about November 5, 2009, a unanimous jury convicted Ames of each of the crimes charged in the Indictment (the "Judgment of Conviction"). Pet. §§ 1-8; Oh Aff. ¶ 3. On January 25, 2010, the Honorable Barbara Kahn, J.C.C., sentenced Petitioner to: (i) a determinate term of seven (7) years of incarceration with eight (8) years of post-release supervision for his conviction for course of sexual conduct against a child in the second degree in violation of N.Y. Penal Law § 130.80; (ii) a concurrent determinate term of

one (1) year of incarceration for his conviction for endangering the welfare of a child in violation of N.Y. Penal Law § 260.10; (iii) two (2) concurrent indeterminate terms of one and one-third (1 1/3) years to four (4) years of incarceration for his conviction for criminal sexual act in the third degree in violation of N.Y. Penal Law § 130.40; and (iv) two (2) concurrent determinate terms of ninety (90) days of incarceration for his conviction for sexual abuse in the third degree in violation of N.Y. Penal Law § 130.55. *See* Oh Aff. ¶ 4. Therefore, in total, Ames was sentenced to an indeterminate term of incarceration ranging from eight and one-third (8 1/3) years to eleven (11) years. *Id.*; *see also* Pet. §§ 1-4.

2. Appeal

On January 26, 2010, Petitioner filed a Notice of Appeal of the Judgment of Conviction, and, on October 6, 2011, Petitioner's appellate counsel, John M. Dowden, Esq., filed Petitioner's appellate brief in the Supreme Court of the State of New York, Appellate Division, Second Judicial Department (the "Second Department"). Pet. § 9; DE [16-3] at 3. On direct appeal, Petitioner argued that the Judgment of Conviction should be reversed because, *inter alia*: (i) the trial court denied his constitutional right to a sufficiently specific indictment by denying his application for a more specific bill of particulars; (ii) the trial court violated Petitioner's Fifth Amendment privilege against self-incrimination by allowing testimony that he refused to give a written statement to police officers; and (iii) the trial court denied Petitioner of his right to a fair trial by permitting the State to exercise an out-of-turn peremptory challenge of a prospective juror in violation of N.Y Crim. Proc. Law § 270.15.[1] DE [16] at 113-43.

In a June 13, 2012 Opinion (the "Direct Appeal Order"), the Second Department affirmed Petitioner's Judgment of Conviction. *See People v. Ames*, 96 A.D.3d 867, 868, 946 N.Y.S.2d 246

---

[1] Although Petitioner raised additional grounds on direct appeal, they are not at issue in the instant Petition.

(2d Dep't 2012). Relevant for purposes of the instant Petition, the Second Department specifically held: (i) that the Bill of Particulars was "reasonably specific and provided the defendant with adequate notice" in light of, *inter alia*, "the age of [A.H.] at the time of the commission of the crimes, the repetitive and clandestine nature of the crimes, and the continuous and long-term nature of the abuse"; (ii) by failing to object to the State's belated peremptory challenge of a prospective juror, Petitioner "waived the rights secured to him under CPL 270.15(2)"; and (iii) Petitioner's "contention that his right against self-incrimination was violated by the testimony at trial that the defendant refused to reduce his oral statement to law enforcement officials to writing [was] unpreserved for appellate review and, in any event, without merit." *Id.* On November 13, 2012, the Court of Appeals of New York (the "Court of Appeals") denied Petitioner's application seeking leave to further appeal the Judgment of Conviction. *See People v. Ames*, 20 N.Y.S.2d 930, 930, 957 N.Y.S.2d 690 (2012).

By way of a Motion for Writ of Error Coram Nobis (the "Coram Nobis Application"), Petitioner sought to vacate the Second Department's June 13, 2012 Direct Appeal Order on the grounds that he received ineffective assistance of appellate counsel. Pet. § 15. In a July 10, 2013 Decision and Order (the "Coram Nobis Order"), the Second Department denied Petitioner's Coram Nobis Application, holding that Petitioner "failed to establish that he was denied the effective assistance of appellate counsel." *See People v. Ames*, 108 A.D. 3d 638, 638, 968 N.Y.S.2d 394 (2d Dep't 2013). On October 29, 2013, the Court of Appeals denied Petitioner's application seeking leave to appeal the Second Department's Coram Nobis Order pursuant to N.Y. Crim. Proc. Law § 460.20. *See People v. Ames*, 22 N.Y.3d 953, 977 N.Y.S.2d 185 (2013).

### C. __The Instant Petition__

On September 2, 2014, Ames filed the instant Petition in the United States District Court for the Western District of New York, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[2] DE [1].  According to Petitioner, he is entitled to a writ of habeas corpus pursuant to 28 U.S.C. § 2254 because:  (i) the trial court violated his Fifth Amendment privilege against self-incrimination by "twice permit[ing] testimony that [Petitioner] refused to give a written statement to the police"; and (ii) he received ineffective assistance of counsel from his appellate counsel.  Pet. § 22.  With respect to his claim of ineffective assistance of counsel, Petitioner claims that, on direct appeal of his Judgment of Conviction, his appellate counsel failed to:  (i) argue that his trial counsel failed to object to the prosecution's alleged violation of N.Y. Crim. P. Law § 270.15; and (ii) raise the argument that the "time frame in the bill of particulars was an unreasonable length of time specified in the indictment" and was insufficiently specific.  *Id.*

On October 9, 2014, the Court ordered Respondent to show cause, by filing a Return to the instant Petition, why a writ of habeas corpus should not be issued pursuant to 28 U.S.C. § 2254. DE [8].  On March 18, 2015, Respondent filed its Return in opposition to Ames' Petition.  DE [15]. According to the State, "[t]here is no basis for a Writ to be issued in this case because the claims . . . are procedurally barred and without merit."  Oh Aff. ¶ 2.  Specifically, with respect to Petitioner's claim for violation of his Fifth Amendment privilege against self-incrimination, Respondent argues that "petitioner is procedurally barred because he did not properly preserve the claim at trial and also because he has not presented a cognizable federal claim."  *See* Respondent's Memorandum of Law ("Resp.'s Opp'n"), DE [15-1], at 5.  Respondent further argues that certain aspects of Petitioner's ineffective assistance of counsel claim are unexhausted because they were "never

---

[2] On September 25, 2014, the instant Petition was transferred to this Court.  DE [4].

properly presented to the state courts," and, in any event, Petitioner's appellate counsel's "representation was proper in all respects . . . ." *Id.* at 14. On May 18, 2015, Ames filed a reply to Respondent's opposition in which he further argues, *inter alia*, that he did not waive his *Miranda* rights, and that he only refused to sign a pre-written statement "because the written statement that [SCPD Detectives] wanted [him] to signed [*sic*] did not reflect anything [he] stated to said Detectives." *See* Petitioner's Reply to Respondent's Return ("Pet.'s Reply Mem."), DE [20], ¶¶ 1-2. According to Ames, the trial court denied him of his right to a fair trial when it "permitted testimony, over defense counsel's objection that petitioner refused to continue talking to Detectives Sanchez and Kirk, and that Petitioner refused to signed [*sic*] a pre-written statement that was written by one of the Detectives." *Id.* at ¶ 3.

## II. LEGAL STANDARD

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court "shall entertain an application for a writ of habeas corpus [on] behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Therefore, federal habeas review is limited to determining whether a petitioner's custody violates federal law, and "does not lie for errors of state law." *Swarthout v. Cooke*, 562 U.S. 216, 219, 131 S. Ct. 859, 861 (2011) (internal quotation marks omitted). The AEDPA further provides that:

> [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based

on an unreasonable determination of the facts in light of the evidence presented in
the State court proceeding.

28 U.S.C. § 2254(d); *see also Harrington v. Richter*, 562 U.S. 86, 102, 131 S. Ct. 770, 786 (2011)

("As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court

relitigation of claims already rejected in state proceedings."); *Maldonado v. Lee*, No, 09-CV-5270,

2012 WL 3240710, at *2 (E.D.N.Y. July 31, 2012) ("Section 2254(d) reflects the view that habeas

corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute

for ordinary error correction through appeal.") (internal quotation omitted).   An unreasonable

application of established federal law occurs "if the state court arrives at a conclusion opposite to

that reached by [the Supreme] Court on a question of law" or if "the state court confronts facts that

are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result

opposite" to that of the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 405, 120 S. Ct. 1495,

1519 (2000).  An unreasonable determination of the facts in light of the evidence presented in state

court occurs when "the state court identifies the correct governing legal principle from [the

Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's

case."  *Id.*  It is well established that the state court's unreasonable application of law or

determination of facts must have been more than merely "incorrect or erroneous"; it must have been

"objectively unreasonable."  *Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001); *see also Sorto v.

Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) ("[I]t is well-established in this Circuit that the

objectively unreasonable standard of § 2254(d)(1) means that petitioner must identify some

increment of incorrectness beyond error in order to obtain habeas relief.") (internal quotation marks

omitted).

## III.    DISCUSSION

As discussed above, in the instant Petition, Ames argues that he is entitled to relief pursuant to 28 U.S.C. § 2254 because:  (i) the trial court violated his Fifth Amendment privilege against self-incrimination; and (ii) he received ineffective assistance of appellate counsel.  Pet. § 22.  Applying the standards outlined above, and for the reasons set forth herein, Ames' Petition is denied.

### A.  <u>Fifth Amendment Privilege Against Self-Incrimination</u>

The Fifth Amendment prevents an individual from being "compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V; *see also Boddie v. New York State Div. of Parole*, 288 F. Supp. 2d 431, 441 (S.D.N.Y. 2003) ("The Fifth Amendment protects against compelled self-incrimination in a criminal prosecution.").  Relevant here, the Supreme Court has held that the Fifth Amendment "forbids either comment by the prosecution on the accused's silence or instructions by the court that such silence is evidence of guilt."  *Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233 (1965).  However, "once an arrestee waives his right to remain silent, the government is entitled to introduce evidence at trial of the arrestee's silence in response to questions, and the government may comment on that silence during summation, as long as the arrestee did not resurrect and assert his right to remain silent."  *Hogan v. Ercole*, No. 05-CV-5860, 2011 WL 3882822, at *10 (E.D.N.Y. Sept. 2, 2011); *see also United States v. Pitre*, 960 F.2d 1112, 1125 (2d Cir. 1992) ("[U]nless [petitioner] resurrected and asserted his right to remain silent, the government was entitled to introduce this evidence at trial and comment on it during summation.").

The trial court did not violate Petitioner's Fifth Amendment privilege against self-incrimination by permitting Detectives Sanchez and Kirk to testify that Petitioner declined to sign

a pre-written statement.[3]  Relevant here, Detective Sanchez testified that, on the afternoon of November 18, 2008, he and Detective Kirk interviewed Petitioner for approximately one (1) hour at the SCPD Seventh Precinct.  Tr. 466:21-467:8.  After asking Ames whether he needed anything and other "general questions," Sanchez advised Ames of his *Miranda* rights using a "*Miranda* card," which is "a small white card that [the SCPD] use[s] prior to speaking to someone that's in custody . . . ."  *Id.* at 467:21-468:3.  Sanchez testified that the *Miranda* card is a "standard form" with pre-printed words on it, and that he went through the *Miranda* rights "one by one" with Petitioner.  *Id.* at 470:6-14.  Specifically, Sanchez informed Petitioner that:  (i) he had the right to remain silent; (ii) anything he said could and would be used against him in a court of law; (iii)  he had the right to speak to an attorney and have him present during questioning; (iv) if he could not afford an attorney, one would be appointed; and (v) if he decided to answer questions without an attorney present, he would "have the right to stop the questioning at any time" until he spoke to an attorney.  *Id.* at 470:16-471:8.  Petitioner stated that he understood his *Miranda* rights and that he still wished to speak to Sanchez and Kirk.  *Id.* at 471:8-472:9.  Ames signed the *Miranda* card, and it was entered into evidence at trial without objection from Petitioner.  *Id.* at 468:23-469:19.  At trial, Sanchez further testified that, after speaking with Ames for approximately one (1) hour, Sanchez offered to "prepare a written statement to account for what [they] spoke about," but that Ames stated that "he

---

[3]    Although the Second Department held that Petitioner's claim regarding self-incrimination "was not preserved for appellate review" pursuant to N.Y. Crim. Proc. Law § 470.05(2), *see Ames*, 96 A.D.3d at 868, the Second Circuit has observed that "the use of a criminal defendant's exercise of his privilege against self-incrimination against him at trial is considered a constitutional violation so fundamental that no objection is necessary to preserve such a claim as an issue of law for appellate review."  *Hawkins v. LeFevre*, 758 F.2d 866, 872-73 (2d Cir. 1985).  Therefore, it is unsettled whether a failure to contemporaneously object to improper testimony that a defendant exercised his privilege against self-incrimination precludes federal habeas consideration pursuant to N.Y. Crim. Proc. Law § 470.05(2).  *See, e.g.*, *Field v. Lord*, No. 05-CV-564, 2013 WL 5524708, at *18 (E.D.N.Y. Oct. 4, 2013) ("Other federal courts in this circuit that have examined this issue have either declined to pass on the adequacy of the procedural ground as a bar or have held . . . that New York's contemporaneous objection requirement is 'adequate' to bar federal habeas review of a Fifth Amendment claim.") (internal citation omitted); *Grigg v. Phillips*, No. 04-CV-662, 2009 WL 2983030, at *8 (E.D.N.Y. Sept. 11, 2009) (analyzing the petitioner's claim "regardless of the fact that Petitioner failed to object during the trial").  However, even assuming Petitioner's Fifth Amendment claim was preserved for appellate review, for the reasons discussed herein, it lacks merit.

would not sign it." *Id.* at 477:13-24. Similarly, Kirk testified that Sanchez "offer[ed] [Ames] an opportunity to give a written statement," but that Ames declined. *Id.* at 536:19-537:15. According to Petitioner, the trial court deprived him of his "rights against self-incrimination when [it] permitted testimony, over defense counsel's objection that petitioner refused to continue talking to Detectives Sanchez and Kirk, and that Petitioner refused to sign a pre-written statement that was written by one of the Detectives." Pet.'s Reply Mem. ¶ 3.

As an initial matter, contrary to Petitioner's argument that the trial court permitted the testimony "over defense counsel's objection," defense counsel did not object to Kirk's testimony that Ames declined the opportunity to make a written statement. Tr. 537:7-15. Similarly, contrary to Ames' claim that the trial court permitted testimony that he "refused to continue talking to Detectives Sanchez and Kirk," neither Sanchez nor Kirk testified that Petitioner refused to continue speaking with them. Rather, Sanchez and Kirk both testified that Petitioner voluntarily spoke with them for at least one (1) hour, and Sanchez testified that Petitioner remained cooperative at all times. *Id.* at 477:25-478:7. Furthermore, although Petitioner argues in conclusory fashion that he "at no time waived his *Miranda* rights," Pet.'s Reply Mem. ¶ 1, Sanchez's trial testimony described above demonstrates that Petitioner knowingly and voluntarily waived his right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436, 475, 86 S. Ct. 1602, 1628 (1966). Similarly, in its *Huntley* Hearing Order, the trial court observed that Petitioner "was read the four-fold *Miranda* warnings from a pre-printed card prior to any questioning," and that he "indicated that he understood the warnings and waivers thereof by signing the bottom of the card." DE [16-1] at 22-26. Where a criminal defendant waives his right to remain silent, and does not subsequently resurrect and reassert that right, evidence of the defendant's silence does not violate his Fifth Amendment privilege against self-incrimination. *See Pitre*, 960 F.2d at 1126 ("[U]nless [the defendant] resurrected and asserted his right to remain silent, the government was entitled to introduce this evidence at trial

and comment on it during summation.").  As Petitioner waived his right to remain silent, voluntarily spoke with Sanchez and Kirk, and did not resurrect or reassert his right to remain silent, Sanchez's and Kirk's trial testimony that Petitioner refused to sign a pre-written statement did not violate his Fifth Amendment privilege against self-incrimination.  *See Franco v. Lee*, No. 10-CV-1210, 2013 WL 704655, at *11 (E.D.N.Y. Feb. 26, 2013) ("Given that petitioner voluntarily gave both oral and written statements to the police implicating himself in the crime, the prosecution's acknowledgment that petitioner refused to give a videotaped statement, to the extent impermissible at all, cannot be held to have infringed his constitutional protection from self-incrimination."); *see also U.S. v. Cooper*, No. 95 Cr. 31, 1995 WL 469702, at *4 (S.D.N.Y. Aug. 8, 1995) (holding that the defendant's *Miranda* rights were not violated where he made oral statements but refused to sign a written statement).

In support of his Petition, Ames argues that he was prejudiced by the testimony regarding his refusal to sign the pre-written statement because "the potential risk of prejudice from evidence of a defendant's selective silence is even greater than the risk to a defendant who chooses to remain totally silent."  Pet.'s Reply Mem. ¶ 7.  According to Petitioner, "[j]urors are more likely to construe a defendant's refusal to answer certain questions as an admission of guilt if the defendant has otherwise willingly answered other police questions."  *Id.*  However, neither Sanchez nor Kirk testified that Petitioner refused to answer any questions, but rather, that he refused to sign the pre-written statement memorializing their conversation.  Furthermore, as neither Sanchez nor Kirk testified as to the actual contents of the pre-written statement that Petitioner refused to sign, there is no risk that a juror would draw negative inferences with respect to the facts contained therein as a result of Petitioner's refusal to sign.  Therefore, Petitioner's argument regarding the "risk of prejudice from evidence of [his] selective silence" lacks merit.

Based upon the foregoing, Ames' Petition is denied with respect to his claim that the trial court violated his Fifth Amendment privilege against self-incrimination.

## B. <u>Ineffective Assistance of Counsel</u>

The Sixth Amendment provides that a criminal defendant "shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 (1970) (observing that "the right to counsel is the right to *effective* assistance of counsel") (emphasis added). A petitioner who challenges "his conviction and sentence on the basis of ineffective assistance of counsel bears a heavy burden." *Antonelli v. United States*, No. 98-2972, 2000 WL 311066, at *1 (2d Cir. 2000). The Supreme Court has held that the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2064 (1984). Therefore, "[a] defendant claiming ineffective assistance of counsel must show (1) that counsel's representation fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant." *Roe v. Flores–Ortega*, 528 U.S. 470, 476-77, 120 S. Ct. 1029, 1034 (2000) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. at 2064). Relevant here, "[a]lthough the *Strickland* test was formulated in the context of an ineffective assistance of trial counsel claim, the same test is used with respect to claims of ineffective appellate counsel." *Utenyshev v. Portuondo*, No. 00-CV-6529, 2003 WL 21499841, at *6 (E.D.N.Y. June 11, 2003); *see also Dominique v. Artus*, 25 F. Supp. 3d 321, 337 (E.D.N.Y. 2014) ("The same standard regarding ineffective assistance of trial counsel under *Strickland* . . . applies to the question of appellate counsel.").

Under the first prong of the *Strickland* test, "the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'"

*Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). It is well established that "[t]he Court must 'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Franco v. Lee*, No. 10-CV-1210, 2013 WL 704655, at *12 (E.D.N.Y. Feb. 26, 2013) (quoting *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065). Therefore, a claim of ineffective assistance of counsel "cannot be based on counsel's failure to raise all nonfrivolous arguments on appeal." *DeVaughn v. Graham*, No. 14-CV-2322, 2017 WL 244837, at *17 (E.D.N.Y. Jan. 19, 2017) (citing *Jones v. Barnes*, 463 U.S. 745, 754, 103 S. Ct. 3308, 3314 (1983)). To satisfy the second prong of the *Strickland* test, "any deficiencies in counsel's performance must be prejudicial to the defense . . . ." *Strickland*, 466 U.S. at 692, 104 S. Ct. at 2067. Therefore, in analyzing the second prong of an ineffective assistance of counsel claim, the question "is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Henry v. Poole*, 409 F.3d 48, 63-64 (2d Cir. 2005).

According to Petitioner, his appellate counsel provided ineffective assistance of counsel because he: (i) did not argue on direct appeal that Petitioner's trial counsel failed to timely object to the prosecutor's out-of-turn peremptory challenge pursuant to N.Y. Crim. Proc. Law § 270.15; and (ii) did not claim that Petitioner's trial counsel was ineffective due to his failure to obtain a more specific Indictment and Bill of Particulars. Pet. §§ 22(B)-(C).

1. New York Criminal Procedure Law § 270.15

Pursuant to N.Y. Crim. Proc. Law § 270.15, after examining and challenging prospective jurors for cause, "the court must permit [the parties] to peremptorily challenge any remaining prospective juror . . . and such juror must be excluded from service." N.Y. Crim. Proc. Law § 270.15(2). In peremptorily challenging prospective jurors, "[t]he people must exercise their

peremptory challenges first and may not, after the defendant has exercised his peremptory challenges, make such a challenge to any remaining prospective juror who is then in the jury box." *Id.* New York courts have observed that, "[i]n no event may the People exercise a peremptory challenge after the defendant has exercised his or her peremptory challenges." *People v. Powell*, 13 A.D.3d 975, 977, 787 N.Y.S2d 480 (3d Dep't 2004); *see also People v. Alston*, 88 N.Y.2d 519, 529, 647 N.Y.S.2d 142 (1996) (describing "the one persistently protected and enunciated rule of jury selection—that the People make peremptory challenges first, and that they never be permitted to go back and challenge a juror accepted by the defense"). The rationale for such strict compliance with N.Y. Crim. Proc. Law § 270.15 is that if "the prosecutor is permitted to reserve its peremptory challenge after the right has been exercised by the defendant, he is enabled to acquire information as to what jurors are satisfactory to the defendant, and to exclude them from the panel for that reason." *People v. McQuade*, 110 N.Y. 284, 294-95 (1888) (internal alterations omitted). According to the Court of Appeals, "[t]his is an advantage to which, under the statute, [the prosecutor] is not entitled." *Id.*

At jury selection, after examining and challenging prospective jurors for cause, the following exchange occurred:

| | |
|---|---|
| THE COURT: | Do the People wish to exercise any peremptory challenges? |
| MS. MOROFF: | No. |
| THE COURT: | Does the defense? |
| MR. STAFFORD: | Yes, Judge. Number five. |
| MS. MOROFF: | Judge, I'm sorry, if I may, I'm sorry. |
| THE COURT: | All right, let's step back. |
| MS. MOROFF: | I apologize, there was one I missed. Number two, Mr. Peter Ircuiolio. |

| | |
|---|---|
| THE COURT: | That's People's one. |
| MS. MOROFF: | Thank you. And that is all in that group. Thank you. |
| THE COURT: | Mr. Stafford. |
| MR. STAFFORD: | Yes, Judge, number five, Mr. Theodore Nevola. |
| THE COURT: | Yes. |
| MR. STAFFORD: | And number 12, Your Honor, Jamie Reve. |

Tr. 139:23-140:21. Petitioner's trial counsel did not object to the prosecution's belated peremptory challenge, and Petitioner now argues that he was deprived of effective assistance of appellate counsel because "[a]ppellate counsel failed to raise on direct appeal that trial counsel failed to object to the prosecution's violation of Criminal Procedure Law 270.15." Pet. § 22(B).

Even assuming that Petitioner's appellate counsel acted objectively unreasonably by not raising an argument on appeal regarding trial counsel's failure to object to the prosecution's violation N.Y. Crim. Proc. Law § 270.15(2), Petitioner fails to demonstrate that he was prejudiced as a result of his appellate counsel's actions. New York courts have observed that a violation of N.Y. Crim. Proc. Law § 270.15(2) "does not serve to undermine confidence in the result" of a trial, and that "nothing indicates that the [failure to object pursuant to N.Y. Crim. Proc. Law § 270.15] ha[s] any impact on the trial or the jury's verdict." *Eley v. Ercole*, No. 08-CV-917, 2010 WL 2695522, at *7 (E.D.N.Y. May 6, 2010); *see also People v. Johnson*, 26 A.D.3d 228, 229, 808 N.Y.S.2d 549 (1st Dep't 2006) (holding that the "benefits conferred by CPL 270.15[2] were not significantly impaired" where the prosecutor "genuinely made a mistake in striking the wrong juror, where defendant did not himself waste a challenge on the subject juror and where defendant took advantage of the court's offer to change his own challenges"); *People v. Kemp*, 291 A.D.2d 236, 236, 738 N.Y.S.2d 25 (1st Dep't 2002) (holding that the defendant "was not prejudiced by the technical irregularity that occurred when the court first rejected the prosecutor's peremptory

challenge to the panelist in question as premature, and then, after defendant had exercised peremptory challenges to other panelists, permitted the prosecutor to renew his challenge to the panelist in question"). In responding to the State's opposition, Ames does not address Respondent's argument that he is not entitled to federal habeas relief as a result of the alleged violation of N.Y. Crim. Proc. Law § 270.15, and he fails to identify any manner in which he was prejudiced as a result of his trial counsel's failure to object to the prosecution's belated peremptory challenge. Indeed, when the prosecution made its peremptory challenge, Petitioner had not yet completed his peremptory challenges as he still struck juror number twelve (12) after the prosecution struck juror number two (2). *See* Tr. 139:23-140:21. Therefore, the prosecution did not gain the tactical advantage of "acquir[ing] information as to what jurors [were] satisfactory to the defendant, and . . . exclud[ing] them from the panel for that reason." *McQuade*, 110 N.Y. at 294-95; *see also People v. Levy*, 194 A.D.2d 319, 320, 598 N.Y.S.2d 231 (1st Dep't 1993) (holding that a technical violation of N.Y. Crim. Proc. Law § 270.15 was not reversible error where the prosecution did not gain "any tactical advantage as a result of [a] belated peremptory challenge"). As Petitioner fails to provide "a single reason as to why these claims would have had a reasonable probability of success before the state's highest court," *Cardova v. LaValley*, 123 F. Supp. 3d 387, 404 (E.D.N.Y. 2015), he is not entitled to relief pursuant to 28 U.S.C. § 2254. Therefore, Ames' Petition is denied with respect to his claim for ineffective assistance of appellate counsel as a result of his appellate counsel's failure to raise an argument on appeal regarding N.Y. Crim. Proc. Law § 270.15.

## 2. Indictment and Bill of Particulars

Petitioner further argues that he received ineffective assistance of appellate counsel because his appellate counsel "failed to raise the Indictment and Bill was [*sic*] insufficient."[4] Pet. § 22(C).

_____

[4] Respondent argues that Petitioner's ineffective assistance of counsel claim regarding the Indictment and Bill of Particulars should be dismissed on the grounds that it is both meritless and unexhausted because "[i]n petitioner's

However, contrary to Petitioner's argument, Petitioner's appellate counsel raised these arguments on direct appeal, arguing, *inter alia*, that Petitioner was "denied his constitutional right to a sufficiently specific indictment when the trial court denied [his] application for a bill of particulars narrowing the time of commission of each allegation contained in counts three through six." DE [16] at 113. To that end, in its Direct Appeal Order, the Second Department specifically addressed the adequacy of the Indictment and Bill of Particulars, holding that, "[u]nder the circumstances, including the age of the child victim A.H. at the time of the commission of the crimes, the repetitive and clandestine nature of the crimes, and the continuous and long-term nature of the abuse, the period contained [in the Indictment] . . . [was] reasonably specific and provided the defendant with adequate notice." *Ames*, 96 A.D.3d at 867-68. As Petitioner's appellate counsel actually raised arguments regarding the Indictment and Bill of Particulars on direct appeal, his "representation was not so deficient as to deprive defendant of his Sixth Amendment rights," *see Glen v. Senkowski*, No. 02-CV-3167, 2003 WL 22952857, at *11 (E.D.N.Y. Oct. 9, 2003), as is required satisfy the first prong of the *Strickland* test. *See Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Furthermore, as with his claim for ineffective assistance of counsel for failure to object pursuant to N.Y. Crim. Proc. Law § 270.15, Petitioner does not address Respondent's opposition insofar as it relates to the Indictment and Bill of Particulars, and Ames fails to identify any specific manner in which he was prejudiced by the level of specificity of the Indictment or Bill of Particulars. *See Cardova*, 123 F. Supp. 3d at 404. Therefore, insofar as Ames claims that he received ineffective assistance of counsel as a result of his appellate counsel's failure to raise an argument on appeal regarding the Indictment and Bill of Particulars, his Petition is denied.

---

Coram Nobis application regarding the alleged ineffective assistance of appellate counsel, he only raised one point – that his appellate attorney was ineffective for failure to raise a claim of ineffective assistance of trial counsel for his failure to object during jury selection." Resp.'s Opp'n at 14. However, as the contents of Petitioner's Coram Nobis Application are not before the Court, the Court will consider the merits of Petitioner's ineffective assistance of counsel claim regarding the Indictment and Bill of Particulars.

## IV.    CONCLUSION

For the reasons set forth herein, Ames' Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person in State Custody is denied.  Because it is clear from the record that Ames is not entitled to the relief provided for in 28 U.S.C. § 2254, the Court will not hold an evidentiary hearing on his motion.  The Court declines to issue a certificate of appealability because Ames has not "made a substantial showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S. Ct. 917, 920 (1962).  The Clerk of Court is directed to serve notice of entry of this Order upon Ames in accordance with Rule 5(b) of the Federal Rules of Civil Procedure and to close this case.


Dated: Central Islip, New York                    **SO ORDERED.**
           September 25, 2017

                                                                *s/ Sandra J. Feuerstein*
                                                                Sandra J. Feuerstein
                                                                United States District Judge